# UNITED STATES DISTRICT COURT
### FOR THE
## WESTERN DISTRICT OF NEW YORK
## (Buffalo Division)

DAVID LEWIS

            *Plaintiff,*

    v.

LETITIA JAMES, *in her official Capacity as Attorney General of the State of New York,*

           *Defendant.*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff DAVID LEWIS ("Plaintiff"), by and through counsel of record JAMES D. TRESMOND, ESQ., bring this complaint against the Defendant, the New York State official responsible for enforcing and implanting New York's laws and regulations infringing the constitutional right of law-abiding American citizens to keep and bear commonly possessed firearms for self-defense and all other lawful purposes, aver and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202, and 42 U.S.C. 1983 and 1988.

3. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2).

## THE PARTIES

4. Plaintiff DAVID LEWIS is a natural person, a resident of Erie County, New York, an adult over the age of 21, a citizen of the United States, and a person legally eligible under federal and New York State law to possess and own firearms.

5. Defendant LETITIA JAMES is the Attorney General of the State of New York whose principal place of business is in Albany, Albany County, New York.

## FACTUAL ALLEGATIONS

a. New York's "Assault Weapons Ban"

6. New York law prohibits the possession and ownership of so-called "assault weapons" which are merely commonly owned semiautomatic sporting rifles that only fire one shot per single trigger pull.

7. An "assault weapon" is defined within New York Penal Law § 265.00(22) as:

## Rifles

(a) A semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

   (i)    a folding or telescoping stock;

   (ii)   a pistol grip that protrudes conspicuously beneath the action of the weapon;

   (iii)  a thumbhole stock;

   (iv)  a second handgrip or a protruding grip that can be held by the non-trigger hand;

   (v)   a bayonet mount;

   (vi)  a flash suppressor, muzzle break; muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

   (vii) a grenade launcher

## Shotguns

(b) a semiautomatic shotgun that has at least one of the following characteristics:

   (i)    a folding or telescoping stock;

   (ii)   a thumbhole stock;

   (iii)  a second handgrip or a protruding handgrip that can be held by the non-trigger hand'

   (iv)  a fixed magazine capacity in excess of seven rounds;

   (v)   an ability to accept a detachable magazine

## Pistols

(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

   (i)    a folding or telescoping stock;

   (ii)   a thumbhole stock'

   (iii)  a second handgrip or protruding grip that can be held by the non-trigger hand;

   (iv)  capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip;

   (v)   a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

    (vi)   a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

    (vii)  a manufactured weight of fifty ounces or more when the pistol is unloaded;

    (viii) a semiautomatic version of an automatic rifle, shotgun, or firearm

8. Such "assault weapons" do not physically fire like fully automatic machine guns. Machine guns fire multiple rounds per single trigger pull.

9. Possession of an "assault weapon" is a Class D felony under § 265.02(7) of the New York.

10.   New York's ban on assault weapons applies to all ordinary, law-abiding citizens who did not already own and register an "assault weapon" prior to the enactment and registration period permitted under statute.

11.   The Plaintiff does not own or possess a firearm that could be classified under the relevant New York statute as an "assault weapon."

12.   Possession of all "assault weapons" is prohibited to any person who did not already own and subsequently register an assault weapon as of the effective date of the law.

13.     Under New York law, therefore, the Plaintiff is prohibited from owning, purchasing, or possessing an "assault weapon" as defined by the relevant statute.

14.     Should the Plaintiff procure or otherwise possess an "assault weapon," in his home state of New York, he would be guilty of a felony crime.

15.     The vast majority of, if not all, firearms classified and prohibited under New York law as "assault weapons" are firearms that have been in common use throughout the United States by law-abiding citizens for decades, if not more than a half century.

16.     Semiautomatic handguns are, without question, weapons in common use. *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("Handguns—the vast majority of which today are semi-automatic . . . have not traditionally been banned and are in common use by law-abiding citizens.").

17.     Upon information and belief, the vast majority of handguns sold in the United States are of the semiautomatic variety.

18.     Additionally, semiautomatic long guns "traditionally have been widely accepted as lawful possessions," see *Staples v. United States*, 511 U.S. 600, 612 (1994) (categorizing an AR-15 rifle which is a prohibited "assault weapon" under the New York Penal Law as a semiautomatic weapon); courts have reliably found that semiautomatic long guns are presently in common use throughout the United States, see *Heller*, 670 F.3d at 1261 ("We think it clear enough in the record that semiautomatic rifles . . . are indeed in 'common use as the plaintiffs contend.' ")

19.     Upon information and belief, the number of semiautomatic long guns that fit the AR- and AK-style designation, of which the New York Penal Law classifies as an "assault weapon" exceeds twenty million in the United States.

20.     Firearms categorized under the New York Penal Law's "assault weapons" ban are capable of firing only a single round of ammunition per trigger pull and cannot be classified as machine guns. *See Staples*, 511 U.S. at 602 n.1.

21.     Virtually all handguns and long guns that New York categorizes as "assault weapons" are used throughout the nation

for self-defense within the home, and other lawful purposes such as hunting and target shooting.

b. <u>The United States Supreme Court's New Standard for Evaluating State Firearms Laws</u>

22.     In *New York State Rifle and Pistol Ass'n v. Bruen*, the Supreme Court rejected a two-step inquiry, replacing it with a history and traditions standard.

c. <u>The Effect on the Plaintiff</u>

23.     The Plaintiff, DAVID LEWIS is an ordinary citizen who is not a prohibited possessor of firearms under federal or state law. Indeed, the Plaintiff is a holder of a New York State concealed carry license in good standing.

24.     As attorney General for the State of New York, Defendant LETITIA JAMES shall "prosecute and defend all actions and proceedings in which the state is interested." Executive Law § 63(1).

25.     But for New York's unconstitutional ban on commonly owned semiautomatic "assault weapons," and the Defendant's enforcement thereof, and the severe criminal penalties and

lifelong disabilities imposed by a felony conviction, the Plaintiff would exercise his right to keep and bear the banned firearms for lawful purposes, including self-defense, without the threat or risk of arrest and prosecution, and the loss of his right to keep and bear arms for engaging in constitutionally protected, lawful conduct

d. The Defendant's Laws and Regulations Violate the Second Amendment

26.     The Second Amendment to the United States Constitution clearly states that "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

27.     Under the Fourteenth Amendment to the United States Constitution, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

28.     The Second Amendment's protections are incorporated

against the states through the Fourth Amendment. *McDonald v.*

*City of Chicago*, 561 U.S. 742, 750 (2010).

29.     The Supreme Court held that "The very enumeration of the

right to keep and bear arms takes out of the hands of government

— even the Third Branch of Government—the power to decide on

a case-by-case basis whether the right is *really worth* insisting

upon. *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008).

30.     The Heller court held that the Second Amendment

"guarantees the individual right to possess and carry weapons in

case of confrontation." *Id.* at 592. Moreover, the Second

Amendment protects firearms "of the kind in common use for

lawful purposes like self-defense." *Id.* at 624.

31.     The right to keep and bear commonly owned firearms cannot

be subject to the New York Penal Law's prohibition that bars

ordinary, law-abiding citizens like the Plaintiff from keeping and

bearing commonly owned firearms. Such law unconstitutionally

criminalizes constitutionally protected behavior and unlawfully

places ordinary citizens under the threat of felony prosecution for exercising their constitutional rights.

32.     The *Heller* Court further ruled that the enshrinement of the right to keep and bear arms in the Second Amendment necessarily takes these type of policy choices "off the table." *Id.* at 636.

33.     Less than one month ago, the United States Supreme Court set forth the standard of constitutional analysis that must be used to test whether a challenged statute violates the Second Amendment. *New York State Rifle & Pistol Assn, Inc. v. Bruen,* 597 U.S. ____ (2022), 2022 WL 2251305.

34.     In *Bruen*, the Supreme Court held that "The Constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id.*

35.     The *Bruen* court rejected the application of a two-part test that involved the application of mean-ends scrutiny and replaced it with a standard that requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.

36.      In *Bruen*, the Supreme Court clearly held that "Today, we

decline to adopt that two-part approach. In keeping with *Heller*,

we hold that when the Second Amendment's plain text covers an

individual's conduct, the Constitution presumptively protects that

conduct. To justify its regulation, the government may not simply

point that the regulation promotes an important interest. Rather,

the government must demonstrate that the regulation is

consistent with this Nation's historical tradition of firearm

regulation. Only if a firearm regulation is consistent with this

Nation's historical tradition may a court conclude that the

individual's conduct falls outside the Second Amendment's

"unqualified command."

37.      Since New York's "assault weapons" ban infringes on

Second Amendment conduct, the "assault weapons" ban under the

New York Penal Law is presumptively unconstitutional.

38.      Moreover, the New York "assault weapons" ban is

inconsistent with the national tradition of firearms regulation;

throughout the past century, firearms classified as "assault

weapons" under the New York Penal Law have been, and continue

to be, in lawful possession by ordinary citizens for the lawful Second Amendment purposes, including self-defense.

39.     Following the landmark *Bruen* decision, the United States Supreme Court granted, vacated, and remanded a decision that upheld an "assault weapons" ban in Maryland that was fundamentally similar to the New York statute herein challenged. *Bianchi v. Frosh*, U.S. No. 21-902.

40.     In light of the United States Supreme Court *Bianchi* decision vacating a decision upholding the Maryland "assault weapons" ban, functionally similar to New York Penal Law's assault weapons ban, the herein challenged New York Statute is presumptively unconstitutional and violates the Plaintiff's Second and Fourteenth Amendment rights.

## CAUSE OF ACTION

### COUNT ONE
### 42 U.S.C. § 1983

41.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

42.     There is an actual and present controversy between the parties.

43.     The Second and Fourteenth Amendments guarantee law-
abiding citizens like the Plaintiff a fundamental right to keep and
bear arms.

44.     The right to keep and bear arms is a fundamental right
enshrined in the United States Constitution.

45.     The right to keep and bear arms includes, but is not limited
to, the right of law-abiding citizens to obtain, possess, purchase,
receive, and own common firearms for lawful purposes, which
include the lawful purpose of self defense.

46.     New York Penal Law Article 265's "assault weapons"
prohibition bans firearms that are commonly used for lawful
purposes. Moreover, the Article 265 "assault weapons" ban
infringes upon protected conduct that exists at the core of the
Second Amendment protection, namely, the possession and
ownership of common firearms for lawful purposes, including self-
defense.

47.     The New York Penal Law Article 265 "assault weapons" ban
is inconsistent with this Nation's history and tradition of firearms
regulation.

48.     42 U.S.C. § 1983 provides a cause of action against state

actors who deprive individuals of their federal constitutional

rights under color of state law.

49.     The Defendant, individually and in her official capacity as

Attorney General of the State of New York, deprived the

fundamental constitutional rights of persons in the State of New

York, including plaintiff DAVID LEWIS through Defendant's

enforcement and implementation of the New York Penal Law's

"assault weapons" ban set forth in New York Penal Law Article

265.

50.     For the above-described reasons, Defendant has acted in

violation of, and continues to act in violation of, 42 U.S.C. § 1983,

compelling the Plaintiff's prayed-for relief.

## **PRAYER FOR RELIEF**

51.     WHEREFORE, Plaintiff respectfully requests the following

relief:

I.     A declaratory judgment that Plaintiff DAVID LEWIS has a

fundamental right to keep and bear arms, including by

acquiring, possessing, transporting into and within New

York, owning, and lawfully using common firearms banned

as "assault weapons" under all relevant provisions of the

New York Penal Law for lawful purposes including self-

defense, as guaranteed under the Second and fourteenth

Amendments to the United States Constitution;

II.   A declaratory judgment that the New York Penal Law

"assault weapons" ban and all related regulations, policies,

and/or customs designed to enforce or implement the same,

prevent Plaintiff DAVID LEWIS, from exercising his

fundamental right to keep and bear arms, including by

acquiring, possessing, transporting into and within New

York, owning, and lawfully using common firearms banned

as "assault weapons" under all relevant provisions of the

New York Penal Law for lawful purposes including self-

defense, as guaranteed under the Second and fourteenth

Amendments to the United States Constitution;

III.   A preliminary and permanent injunction prohibiting the

Defendant, and the Defendant's respective employees,

officers, agents, representatives, and all those acting in

15

concert or participation with her, and all who have notice of

the injunction, from enforcing the New York Penal Law's

Article 265 "assault weapons" ban and all related

regulations, policies, and/or customs designed to enforce or

implement the same;

IV.   Attorney's fees, expert fees, and costs pursuant to 42 U.S.C.

§ 1988, and any other applicable law; and

V.    Such other and further relief that this Court deems just and

proper.

Respectfully submitted,

Dated: Buffalo, New York
July 7, 2022

/s/James D. Tresmond
JAMES D. TRESMOND, ESQ.
N.Y.S. Atty. Reg. #2900926
*Counsel of Record*
424 Main Street Suite 1908
Buffalo, New York 14202
Tel. (716) 858-3115
Fax (716) 858-3116
Email law@tresmondlaw.com